UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

*In re*                                                          Chapter 7

COCO FOODS, INC.,                                    Case No. 8-17-76177-reg

---------------------------------------------------------------------x

ROBERT L. PRYOR, Chapter 7 Trustee of the
Bankruptcy Estate of Coco Foods, Inc.,

                             Plaintiff,                Adv. Pro. No. 8-18-08003-reg

      -against-

NELSON & SONS FORMALS LTD., RYCHARDS
FORMALS LTD., NELSON & SONS RENTALS INC.
and RICHARD NELSON,

                             Defendants.

---------------------------------------------------------------------x


---------------------------------------------------------------------x

*In re*                                                          Chapter 7

COCO PARTNERS, INC.,                               Case No. 8-17-76178-reg

---------------------------------------------------------------------x

ROBERT L. PRYOR, Chapter 7 Trustee of the
Bankruptcy Estate of Coco Partners, Inc.,

                             Plaintiff,                Adv. Pro. No. 8-18-08004-reg

      -against-

NELSON & SONS FORMALS LTD., RYCHARDS
FORMALS LTD., NELSON & SONS RENTALS INC.
and RICHARD NELSON,

                             Defendants.

---------------------------------------------------------------------x

# DECISION AFTER TRIAL

       This matter is before the Court pursuant to adversary proceedings commenced by Robert

L. Pryor, Esq. (the "Trustee" or the "Plaintiff") seeking to avoid and recover transfers made by

two debtor companies (Coco Partners, Inc. ("Coco Partners") and Coco Foods, Inc. ("Coco

Foods")) in connection with their acquisition of certain tuxedo rental stores operating on Long

Island from entities owned and controlled by Richard Nelson.  The debtors purchased the stores in two simultaneous transactions but the relevant issues raised in each transaction are identical. The defendants named in each adversary proceeding (Nelson & Sons Formals Ltd., Rychards Formals Ltd., Richard Nelson and Nelson & Sons Rentals Inc. (collectively, the "Defendants")) chose not to participate in the joint trial.   Despite not participating in the trial, the Court can discern from the record that the Defendants believe they are insulated from liability because the agreements between the parties contained language stating that Coco Foods and Coco Partners did not rely on any representations made by the tuxedo rental stores.  Accordingly, any responsibility for economic harm to Coco Foods and Coco Partners lies with the principal of these entities for his failure to uncover the truth.

The Defendants' argument fails to recognize that the statutes authorizing the recovery of constructively fraudulent transfers are drafted neither to reward the debtor, nor to punish the defendant for intentional wrongdoing.  Rather, the basic intent of constructive fraudulent conveyance statutes is to protect creditors of a debtor from transactions where assets of a debtor's estate were transferred for less than fair value.  Richard Nelson, who was the principal for each of the corporate defendants and orchestrated the structure of the transactions, may believe that he cleverly outwitted the principal of the debtors, but his maneuvers do little as a matter of law to protect the recipients of the fraudulent transfers from liability in these actions. To the extent they as transferees have statutory or other legitimate defenses to such actions, they must assert them in the adversary proceeding itself.  Having failed to assert any defenses, the recipients are liable for the fraudulent conveyances.  The Court notes that Richard Nelson directed the flow of all consideration paid by the debtors to an entity he controlled.  Neither that entity nor Richard Nelson transferred anything of value to either Coco Foods or Coco Partners

and would appear to have no defense to entry of judgments in the amounts claimed by the Trustee.  The very scheme that Richard Nelson devised gave the actual transferees no cover for these claims. However, the Court will view the transactions as a whole and credit the recipients of the fraudulent transfers with the value of the assets conveyed from the tuxedo rental stores to the two debtors.

The Trustee has established by a preponderance of the evidence that the transfers are avoidable under 11 U.S.C. § 548 and under § 274 of the New York Debtor and Creditor Law ("DCL").  Coco Foods and Coco Partners received less than fair consideration for the transfers, and the transfers rendered both debtors insolvent and with unreasonably small capital.  The Trustee may recover the value of the transfers from the two recipients of the transfers, Nelson and Nelson & Sons Rentals, Inc. Based on the overall structure of the transactions, the two defendants that provided value to Coco Foods and Coco Partners did not receive any of the consideration paid by Coco Foods and Coco Partners.  Nevertheless, the dollar amounts of the judgments will reflect the value received by Coco Foods and Coco Partners from Rychards Formals Ltd. and Nelson & Sons Formals Ltd, respectively.

### Procedural History

On October 9, 2017 (the "Petition Date"), Coco Foods and Coco Partners filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code and the Trustee was appointed in both cases. On January 8, 2018 the Trustee commenced adversary proceeding no. 18-8003 ("Coco Foods Adv. Pro.") and adversary proceeding no. 18-8004 ("Coco Partners Adv. Pro."). The original defendants in each adversary proceeding were Nelson & Sons Formals Ltd., Rychards Formals Ltd. and Richard Nelson (collectively, the "Original Defendants").  On February 5, 2018, the Original Defendants filed answers to the complaints and on February 7,

2018, the Original Defendants filed amended answers to the complaints. By stipulations and orders entered on June 22, 2018, the Original Defendants consented to amending the complaints to add Nelson & Sons Rentals Inc. as defendants in each adversary proceeding.    On July 19, 2018, the Defendants filed amended answers to each amended complaint.   On June 12, 2019, Nelson & Sons Formals Ltd. filed a proof of claim in the secured amount of $200,000 in the Coco Partners case.  On June 12, 2019, Nelson & Sons Rentals Inc. filed a proof of claim in the secured amount of $200,000 in the Coco Foods case.

The Defendants were represented by counsel through August 6, 2019, and thereafter the Defendants acted *pro se* in both adversary proceedings.

A series of motions were filed in both adversary proceedings which remained pending at the trial, as follows:

1) Motion by the Defendants for summary judgment to dismiss the complaint [Coco Foods Adv. Pro, ECF no. 59, Coco Partners Adv. Pro, ECF no. 64]
2) Motion by the Trustee for sanctions and for entry of default judgment against the Defendants [Coco Foods Adv. Pro, ECF nos. 62, 63, Coco Partners Adv. Pro, ECF nos. 67, 68]
3) Application by Richard Nelson for a Writ ("Writ Application") to provide evidence of jurisdiction and demand for dismissal [Coco Foods Adv. Pro, ECF no. 74, Coco Partners Adv. Pro, ECF no. 76]
4) Motion by the Defendants for default judgment with respect to the Writ Application [Coco Foods Adv. Pro, ECF no. 80, Coco Partners Adv. Pro, ECF no. 81]

On July 21, 2022, the Trustee filed pretrial statements for both adversary proceedings.  The Defendants did not file pretrial statements. On July 26, 2022, a joint trial on the adversary proceedings was held.  The Defendants did not appear or otherwise participate in the scheduled trial.  At the hearing, the Court denied the Defendants' motions for summary judgment and the Writ Applications, as well as the motions by the Defendants for default judgment with respect to the Writ Applications.   The Court granted the Trustee's motions for sanctions and denied the

motion seeking default judgment against the Defendants.  Upon conclusion of the trial, the

adversary proceedings were marked submitted.

## Facts

Parties:

Steven Fielitz ("Fielitz"): Sole owner of Coco Foods and Coco Partners.

Nelson & Sons Formals Ltd ("Nelson Formals"): A corporation that operated a tuxedo rental and sale business located in Massapequa, New York.

Rychards Formals Ltd. ("Rychards"): A corporation that operated a tuxedo rental and sale business located in Carle Place, New York.

Nelson & Sons Rentals Inc. ("Nelson Rentals"): Assignee of certain notes executed by Coco Foods and Coco Partners payable to Nelson Formals and Rychards connection with their respective purchases of the assets of Nelson Formals and Rychards.  Nelson Rentals was 100% owned by Richard Nelson and was dissolved in September 2017.

Richard Nelson ("Nelson"): principal and 100% owner of Nelson Formals, Rychards and Nelson Rentals.

In 2016, Rychards and Nelson Formals were operating businesses.  In 2015, Nelson

Formals and Rychards entered into marketing agreements with Transworld Business Advisors of

Huntington ("Transworld") for Transworld to facilitate the sale of the businesses and assets of

Rychards and Nelson Formals.  In 2015 and 2016, Nelson and Transworld engaged in

negotiations with Fielitz regarding the sale of the Rychards and Nelson Formals businesses to

Coco Foods and Coco Partners, respectively.  Fielitz was given access to the QuickBooks for

Rychards and Nelson Formals, along with summaries of business records for both entities.  (Exs.

13, 14, Coco Partners Adv. Pro.) (Exs. 14, 15, Coco Foods Adv. Pro.).  The profit and loss

statements for calendar year 2015 which were initially provided to Fielitz reflected as follows:

Rychards:

Income in the amount of $294,005

Expenses in the amount of $242,442.39

Net income in the amount of $51,552.61


Nelson Formals:

Income in the amount of $433,118.97

Expenses in the amount of $313,391.36

Net income in the amount of $119,187.61


The computerized sale systems for 2015 reflected $353,141 in sales for Rychards and $516,166 in sales for Nelson Formals.   Steven Fielitz testified at trial that he relied on this information in determining whether to purchase the two businesses.  (Trial Tr. p. 34-36).  After certain adjustments to income and expenses were made for each business based on representations made by Nelson to Transworld during the negotiations, the net income for 2015 for Rychards was fixed at $186,440.29 (Exs. 14 and 15, Coco Foods Adv. Pro.).  Based on similar adjustments, the net income for 2015 for Nelson Formals was fixed at $329,732.35 (Exs. 13 and 14, Coco Partners Adv. Pro.).  Fielitz was also given access to the two stores for a brief period of time and he undertook an inventory of the formalwear at each store.  (Trial Tr. p. 37-38).  Based on this information, Coco Foods purchased Rychards and Coco Partners purchased Nelson Formals for a combined total amount of $950,000.  (Ex. 4.). According to Fielitz, the agreed upon total purchase price was a calculation of approximately two times the purported net profit for each business for the 2015 calendar year.

The closing for both sales took place on May 18, 2016.  The purchase price for Rychards was $380,000, payable as follows:  a note in the amount of $110,000, $38,000 as a down

payment and a check at closing in the amount of $197,800. The broker received $34,200. (Ex. 10, Coco Foods Adv. Pro.).

The purchase price for Nelson Formals was $570,000, payable as follows: a note in the amount of $165,000, $57,000 as a down payment and a check at closing in the amount of $296,700. The broker received $51,300. (Ex. 10, Coco Partners Adv. Pro.).

Even though the sellers were Nelson Formals and Rychards, neither entity received the sale proceeds. The net sale proceeds were deposited into a Charles Schwab account held by Nelson Rentals. (Ex. 13, Coco Foods Adv. Pro.) (Ex. 12, Coco Partners Adv. Pro.). Both promissory notes were assigned to Nelson Rentals. (Ex. 6). Steven Fielitz testified that all payments pursuant to both notes were made to Nelson Rentals. (Trial Tr. p. 68). Nelson Rentals received $30,254 from Coco Partners under its note and $20,168 from Coco Foods under its note before Coco Partners and Coco Foods defaulted. (Trustee's Pretrial Memoranda). Mr. Nelson was the 100% owner of Nelson Rentals, Nelson Formals and Rychards.

At the closing, Coco Partners was indebted to Nelson Rentals on the promissory notes in the principal amount of $275,000 plus interest and to Nelson Formals' landlord for the store lease it assumed in the amount of $847,454 plus additional rent for a total of at least $1,122,454.00. (Exs. 25 26, Coco Partners Adv. Pro.). Coco Foods was indebted to Nelson Rentals on the promissory notes in the principal amount of $275,000 plus interest and under the lease it assumed from Rychards pursuant to which Coco Foods became liable for the lease obligations of Rychards. (Exs. 27, 28, Coco Foods Adv. Pro.).

Shortly after the closing on May 18, 2016, Fielitz discovered a number of discrepancies between the information provided to him prior to the sale and the actual financial condition of each business. While there were four disclosed employees of Rychards with an approximate

payroll cost of $76,081 per year, the actual number of employees was between nine and twelve. (Ex. 15, Coco Foods Adv. Pro.; Trial Tr. p. 49). Nearly all of the additional employees were paid in cash and their salaries were not reflected in the payroll information provided to Fielitz.  The only explanation provided by Nelson was that the additional employees were needed as seasonal hires.   The actual payroll costs of the employees needed to operate Nelson Formals was approximately $100,000 more than the disclosed payroll expenses of Nelson Formals. (Trial Tr. p. 49).

The actual sales for 2015 had been inflated for each store as well.  Fielitz testified that after reviewing the actual invoices, he determined that the POS systems for 2015, which were provided to him, overstated sales by approximately $113,000 between the two stores.  (Trial Tr. p. 58).  The lower sales were also consistent with the sales for 2016 and 2017 for each store. (Exs. 31 and 32, Coco Partners Adv. Pro.) (Exs. 21 and 22, Coco Foods Adv. Pro.).

By December 2016, Fielitz realized he would need additional funds to keep the two stores operating.  Coco Foods took out a line of credit from OnDeck Capital in the approximate amount of $33,875, a line of credit from TD Bank in the approximate amount of $85,000 and incurred credit card debt in the approximate amount of $15,000.  (Trial Tr. p. 59 – 62). Mr. Fielitz guaranteed the debt.  By February 2017, Fielitz had invested approximately $37,000 of his personal funds to keep the two stores operating.   (Trial Tr. p. 66).

After the closing, Coco Partners made payments pursuant to its notes to Nelson Rentals in the total amount of $30,254.40 and Coco Foods made payments pursuant to its note to Nelson Rentals in the total amount of $20,168.00 on account of the notes before defaulting.  In sum, Nelson Rentals received $383,954 from the sale of Nelson Formals and $255,968.00 from the sale of Rychards.  In September 2017, Nelson Rentals was dissolved.  (Ex. 33, Coco Foods Adv.

Pro.).  At the time that Nelson Rentals was dissolved, the Charles Schwab account held $340,443.58 (Ex. 13, Coco Foods Adv. Pro.) (Ex. 12 Coco Partners Adv. Pro.).  As the sole owner of Nelson Rentals, Mr. Nelson was entitled to the remaining funds in the Charles Schwab account.  (Coco Foods Pretrial Memorandum, p. 9).

In February 2017, Fielitz  placed Coco Partners and Coco Foods for sale.  (Coco Partners Ex. 34). Fielitz received no viable offers after marketing the businesses.   After receiving no viable offers, Coco Partners and Coco Foods filed petitions for relief under Chapter 7.  On March 8, 2018, the Trustee sold the inventory, fixtures and equipment of Coco Partners for $4,616.00 and the inventory, fixtures and equipment of Coco Foods for $1,584.24.

Immediately after the closing for each business, Coco Foods and Coco Partners had liabilities which exceeded their assets based upon a fair market valuation.  Immediately after the closing for each business, Coco Foods and Coco Partners were engaged in a business with unreasonably small capital.  The record reflects the Defendants have provided no evidence to refute the allegations of the Trustee or the evidence introduced by the Trustee at trial.

## Discussion

1. **Adversary Proceeding No. 18-8003**
   a. **Equitable Subordination**

The first cause of action is for equitable subordination of the Defendants' claims in the underlying case of Coco Foods.   Although this cause of action is set forth in the complaint, the Trustee did not include any reference of this claim in his pretrial memorandum, nor did the Trustee raise this claim at trial.  For these reasons, the Trustee has failed to make a *prima facie* claim for equitable subordination of the Defendants' claims and the first cause of action shall be dismissed.

### b. Fraudulent Conveyance: 11 U.S.C. § 548(a)(1)(B)

Pursuant to the second cause of action, the Trustee seeks to avoid transfers made by Coco Foods to the Defendants as constructive fraudulent conveyances. 11 U.S.C. § 548(a)(1)(B) states that the trustee may avoid any transfer of an interest of the debtor or any obligation incurred by the debtor if the debtor received less than "reasonably equivalent value in exchange for such transfer or obligation" and the debtor:

(I)     was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II)    was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III)   intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured

11 U.S.C. § 548(a)(1)(B).

This section permits the Court to set aside transactions that "unfairly or improperly deplete a debtor's assets." *Togut v. RBC Dain Correspondent Servs. (In re S.W. Bach & Co.),* 435 B.R. 866, 875 (Bankr. S.D.N.Y. 2010). Any transaction made by a financially impaired debtor for less than equivalent value is subject to avoidance. *Id*. at 876. The plaintiff has the burden of demonstrating the elements of this section by a preponderance of the evidence. *Id*. at 875.

### (i)     Reasonably Equivalent Value

The term "reasonably equivalent value" is not defined in the Bankruptcy Code. Courts determine reasonably equivalent value based on the consideration provided between the parties

at the time of the transfer or incurrence of debt. *FCC v. NextWave Personal Commc'ns, Inc. (In re Nextwave Personal Commc'ns, Inc.*), 200 F.3d 43, 56 (2d Cir. 1999). "The consideration given in exchange for the transfer need not be mathematically equal, or a penny for penny". *Akanmu v. Xaverian High School (In re Akanmu)*, 502 B.R. 124, 130 (Bankr. E.D.N.Y. 2013). However, the benefits received by the debtor must approximate the expected costs. *In re Lyondell Chemical Co.*, 567 B.R. 55, 114 (Bankr. S.D.N.Y. 2017).

The transfers made by Coco Foods are the note and security agreement in favor of Rychards, which was assigned to Nelson Rentals, and the cash payments made by Coco Foods to Nelson Rentals which totaled $255,968**.**  To determine whether reasonably equivalent value was paid, the Court must conduct a two - step inquiry.  First the Court must determine whether any value was received by Coco Foods, *i.e.* any realizable commercial value as a result of the transaction.  *In re Lyondell Chemical Co.*, 567 B.R. at 113.  Because the business purchased by Coco Foods was generating some profit based on the actual numbers at the time of sale, Coco Foods did receive some value from the transaction.  The second inquiry is whether the value was reasonably equivalent to the transfers made by Coco Foods:

> Generally speaking, "[f]air equivalence only requires that the value of the consideration be reasonably equivalent rather than exactly equivalent in value to the property transferred or obligation assumed." *Murphy v. Meritor Sav. Bank (In re O'Day Corp.)*, 126 B.R. 370, 393 (Bankr. D. Mass. 1991) (citation omitted); *Harrison v. N.J. Comm. Bank (In re Jesup & Lamont, Inc.*), 507 B.R. 452, 472 (Bankr. S.D.N.Y. 2014) ("A finding of reasonably equivalent value does not require an exact equivalent exchange of consideration. However, the benefits the debtor receives from the transfer must approximate its expected costs.") (internal citations omitted).

*In re Lyondell Chemical Co.*, 567 B.R. at 114.

The total transfers made by Coco Foods to the Defendants amounted to approximately $255,968. While the Trustee argues that Coco Foods received no value for the transfers, based on the figures Fielitz acknowledged at trial, the business purchased by Coco Foods generated net income of approximately $21,000 for 2015. Fielitz also testified that he was willing to pay two times the 2015 net annual income for the business. (Trial Tr., p. 40). Given the great disparity between what Coco Foods paid for the business versus the actual value of the business, the Court finds that the transfers made by Coco Foods to Nelson Rentals, as well as the obligations incurred by Coco Foods in favor of Nelson Rentals, were not in exchange for fair consideration.

**(ii)     Insolvency**

Bankruptcy Code § 548(a)(1)(B) (ii) (I) requires a showing that the debtor either was insolvent on the date of each transfer or that the debtor became insolvent because of the transfer. Section 101 of the Bankruptcy Code defines "insolvency" as the "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation." 11 U.S.C. § 101 (32). Courts have held that a debtor is insolvent if the debtor's liabilities exceeded its assets at the time of each transfer, under a balance sheet test. *Coan v. Orlando Predators Sports Group, LLC (In re People's Power and Gas, LLC)*, 608 B.R. 333, 339 (Bankr. D. Conn. 2019). In this case, on the date of the closing of the sale, Coco Foods was indebted under the promissory note assigned to Nelson Rentals for $110,000 plus interest, and the landlord of Nelson Formals for rent under the assumed lease in the amount of $847,454 plus additional rent. The total obligations far exceeded the value of the business at the time of the closing, which the Court has valued at $42,000, plus the $35,067.49 in the Coco Foods operating account at the time of the sale closing. (Ex. 20, Coco Foods Adv. Pro.). Even using the purported value of the assets at $380,000, Coco Foods was still insolvent, and remained insolvent at the time of each

transfer.  Based on the record presented by the Trustee, which has not been refuted by the

Defendants, the elements of § 548(a)(1)(B) (ii) (I) have been proven by a preponderance of the

evidence.

### (iii)    Unreasonably Small Capital

In order to satisfy the elements of Bankruptcy Code § 548(a)(1)(B)(ii)(II), the Trustee

must prove that at the time of the transfers, Coco Foods was engaged in or about to engage in a

business or a transaction which would leave it with unreasonably small capital.  11 U.S.C. §

548(a)(1)(B)(ii)(II).  This test requires a showing short of actual insolvency:

> [It] 'is aimed at transfers that leave the transferor technically
> solvent but doomed to fail.'[*Tese-Milner v. Edidin & Assocs.,* 490
> B.R. 84, 98 (Bankr. S.D.N.Y. 2013)] (citing *MFS/Sun Life Trust-
> High Yield Series v. Van Dusen Airport Services Co.*), 910 F.Supp.
> 913, 944 (S.D.N.Y. 1995). In this regard, a debtor has
> 'unreasonably small' assets if insolvency was inevitable in the
> reasonably foreseeable future. *Adelphia Recovery Trust v. FPL
> Grp., Inc. (In re Adelphia Communs. Corp.),* 652 F. App'x 19, 22
> (2d Cir. 2016).

*In re Direct Access Partners*, LLC, 602 B.R. 495, 536 (Bankr. S.D.N.Y. 2019).

Having found that Coco Foods was insolvent as a matter of law at the time of the

transfers, the evidence also supports a finding that the transfers left Coco Foods with

unreasonably small capital.  Factors that may be used to determine whether capital was

unreasonably small would include Coco Foods' debt to equity ratio, the extent of its capital

cushion over time, and the need for working capital relative to similar businesses.  *In re Direct

Access Partners*, LLC, 602 B.R. at 536 (citing *Official Comm. of Unsecured Creditors of Vivaro

Corp. v. Leucadia Nat'l Corp., Inc. (In re Vivaro Corp.),* 524 B.R. 536, 551 (Bankr. S.D.N.Y.

2015); *In re Taubman*, 160 B.R. 964, 986 (Bankr. S.D.Ohio 1993)).

Coco Foods lacked sufficient income to cover its costs within six months of the closing and relied on borrowed funds for its operations. In addition, Coco Foods was constrained to file for bankruptcy relief approximately seventeen months after Coco Foods bought the business. The Defendants have introduced no evidence to counter this evidence, and the Court concludes that the elements of 11 U.S.C. § 548(a)(1)(B)(ii)(II) have been established by a preponderance of the evidence.  Therefore, judgment shall be entered in favor of the Trustee on the second cause of action.

### c.  Fraudulent Conveyance:  N.Y. DCL  § 274

The Trustee's third cause of action is pursuant to § 274 of the DCL. Under this section, the Trustee is empowered to recover every conveyance made without fair consideration, at a time when the transferor "is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital," without regard to the actual intent of the transferor.  N.Y. DCL § 274.  "Fair consideration" for purposes of the DCL can be established by showing that the transfer was in exchange for "fair equivalent" value and that the transferee acted in good faith. N.Y. DCL § 272(a).

 "Fair consideration" under the DCL and "reasonably equivalent value" under § 548(a)(1)(B)(i) have substantially the same meaning. *Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 458 B.R. 87, 110 (Bankr.S.D.N.Y.2011) (citations omitted); *In re Akanmu*, 502 B.R. at 130, 131.  Having already determined that the transfers at issue were made for less than reasonably equivalent value, the Court also finds that the transfers and the obligations incurred were made without fair consideration.  Because the Court finds that Coco Foods did not receive fair equivalent value, there is no need to determine whether the Defendants acted in good faith with respect to the transfers.

"Unreasonably small capital" has the same meaning under the DCL as it has under §

548(a)(1)(B)(i).  *In re Direct Access Partners*, LLC, 602 B.R. at 535 (citing. *Tese-Milner v. Edidin*

*& Assocs.,* 490 B.R. 84, 98 (Bankr. S.D.N.Y. 2013)).  Having concluded that Coco Foods had

unreasonably small capital remaining after the transfers, the Court concludes that each element

of DCL § 274 has been satisfied.  Therefore, judgment is granted in favor of the Trustee as to the

third cause of action.


### d.  Recovery of Avoided Transfer:  11 U.S.C. §550

In the fourth cause of action, the Trustee alleges that each of the Defendants is an initial,

mediate or immediate transferee of the transfers made by Coco Foods.  Pursuant to this section:

> [T]he trustee may recover, for the benefit of the estate, the property
> transferred, or, if the court so orders, the value of such property,
> from—
>
> > (1) the initial transferee of such transfer or the entity for
> > whose benefit such transfer was made . . .

11 U.S.C. §550(a).

The purpose of this section is to restore the estate to its financial condition prior to the

transfers at issue. *In re Colonial Realty Co*., 226 B.R. 513, 525-526 (Bankr. D. Conn 1998)

(citations omitted).   The total amounts transferred to the Defendants, minus the consideration

received by Coco Foods, determines the amount the Trustee may recover.  *Id*.  The record

reflects that the total amount of transfers made by Coco Foods to Nelson Rentals equals

$255,968.00.  Based on the structure of the transactions, neither Rychards nor Nelson Formals

were the initial transferees.  The principal of the corporate defendants, Nelson, directed the flow

of funds directly to Nelson Rentals, which is the initial transferee for the purposes of recovery under §550(a).  In return Coco Foods received assets valued at $42,000.00 based on Fielitz's willingness to pay two times the net income for the business.  Therefore, the Trustee is entitled to recover $213,968.00 in the Coco Foods adversary proceeding.  The Trustee has established that the transfers were deposited into the Charles Schwab account held by Nelson Rentals, and that any funds withdrawn were for the benefit of Nelson, who was the sole owner of Nelson Rentals. After Nelson Rentals was dissolved, there were funds remaining in the Charles Schwab account to which Nelson had access.  Therefore, any transfers from the Charles Schwab account were made to Nelson or for his benefit.  For these reasons, judgment shall be entered against Nelson Rentals as the initial transferee and against Nelson as the immediate transferee in the amount of $213,968.00.  Prejudgment interest shall accrue on the date the fraudulent transfers occurred, at the prime interest rate in effect at the time.  Post judgment interest shall accrue at the federal judgment rate.

## 2.  Adversary Proceeding No. 18-8004

### a.  Equitable Subordination

For the same reasons as set forth in part 1.a. of this Memorandum Decision, the Trustee has failed to establish the elements of equitable subordination with respect to the Defendants' claims in the Coco Partners case.  Therefore, the first cause of action is dismissed.

### b.  Fraudulent Conveyance:  11 U.S.C. § 548(a)(1)(B)

Pursuant to the second cause of action, the Trustee seeks to avoid transfers made by Coco Partners to the Defendants as constructive fraudulent conveyances.  11 U.S.C. § 548(a)(1)(B) states that the trustee may avoid any transfer of an interest of the debtor or any

obligation incurred by the debtor if the debtor received less than a "reasonably equivalent value in exchange for such transfer or obligation" and the debtor is either insolvent at the time of the transfers or the debtor is left with unreasonably small capital at the time of the transfers.11 U.S.C. § 548(a)(1)(B).

The transfers at issue in the Coco Partners case are the note and security agreement in favor of Nelson Formals as payee, which was assigned to Nelson Rentals, and the cash payments made by Coco Partners to Nelson Rentals which totaled $383,954. To determine whether reasonably equivalent value was paid, the Court must conduct a two - step inquiry. As in the Coco Foods adversary proceeding, the Court must first determine whether any value was received by Coco Partners. Because the business was generating a profit based on the actual data at the time of sale, Coco Partners received some value when it purchased the Nelson Formals business. The second inquiry is whether the value was reasonably equivalent to the transfers made by Coco Partners.

The Court finds that the value of the assets purchased by Coco Partners was equivalent to two times the annual net profit, based on Fielitz's testimony. The annual net profit for Nelson Formals in 2015 was approximately $144,751.27, based on the actual income and expenses. Therefore, the value received by Coco Partners was roughly equivalent to $289,507. The amount Coco Partners paid for the business was $383,954, which far exceeded this amount. Therefore, for the same reasons, Coco Partners did not receive the fair equivalent in exchange for the transfers made to Nelson Rentals.

In this case, on the date of the closing of the sale, Coco Partners was indebted to Nelson Rentals as assignee under the promissory note for $275,000 plus interest, and to the landlord of Nelson Formals for rent under the assumed lease in the amount of $845,529. (Trial Tr. p. 70).

The total obligations of Coco Partners exceeded the value of the business at the time of the closing, which the Court has valued at no greater than $289,507.   Even using the purported value of the assets at $570,000, Coco Partners was still insolvent, and remained insolvent at the time of each transfer.  Based on the record presented by Coco Partners, which has not been refuted by the Defendants, the elements of § 548(a)(1)(B) (ii) (I) have been proven by a preponderance of the evidence.

Because the transfers rendered Coco Partners insolvent, the transfers also left Coco Partners with unreasonably small capital as a matter of law.  For these reasons, judgment shall be entered in favor of the Trustee against the Defendants on the second cause of action pursuant to 11 U.S.C. § 548(a)(1)(B).

### c.  Fraudulent Conveyance:  N.Y. DCL  § 274

The third cause of action is pursuant to § 274 of the DCL. Under this section, the Trustee is empowered, pursuant to Bankruptcy Code § 544, to utilize this section of New York law to recover every conveyance made without fair consideration, at a time when the transferor "is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital," without regard to the actual intent of the transferor.  N.Y. DCL § 274.  Because the Court has already concluded that the transfers were made without fair consideration and Coco Partners was left with unreasonably small capital at the time of the transfers, judgment shall be entered in favor of the Trustee on the third cause of action.

### d.  Recovery of Avoided Transfers:  11 U.S.C. §550

As with the Coco Foods adversary proceeding, the total amounts transferred to the Defendants, minus the consideration received by Coco Partners, determines the amount the

Trustee may recover.  The record reflects that the total amount of transfers made by Coco Partners to Nelson Rentals equals $383,954.  Nelson Rentals is the initial transferee for the purposes of recovery under §550(a).  In return Coco Partners received assets valued at $289,502 based on Fielitz's willingness to pay two times the annual net income for the business. Therefore, the Trustee is entitled to recover $94,452 in the Coco Partners adversary proceeding. The Trustee has established that the transfers were deposited into the Charles Schwab account held by Nelson Rentals, and that any funds were withdrawn by Nelson (Ex. 12, Coco Partners). Therefore, Nelson is an immediate transferee of the transfers and is liable under this cause of action as well.  For these reasons, judgment shall be entered against Nelson Rentals as the initial transferee and against Nelson as the immediate transferee in the amount of $145,550. Prejudgment interest shall accrue on the date the fraudulent transfers occurred, at the prime interest rate in effect at the time.  Post judgment interest shall accrue at the federal judgment rate.

### 3.  Disallowance of Proofs of Claim filed by the Defendants

Nelson Formals filed a proof of claim in the secured amount of $200,000 in the Coco Partners case.  Nelson Rentals filed a proof of claim in the secured amount of $200,000 in the Coco Foods case.  While Nelson Formals is a named defendant in the Coco Foods and Coco Partners cases, Nelson Formals is not a transferee of any of the transfers at issue.  However, Nelson Rentals was the initial transferee of the transfers in the Coco Foods case and did file a proof of claim in the Coco Foods case.  Pursuant to § 502(d) of the Bankruptcy Code, this Court shall disallow the claim of any entity "from which property is recoverable under section ... 550 ... unless such entity has paid the amount ... for which such entity ... is liable under section ... 550." Therefore, until the judgment in the Coco Foods case is paid in full, the claim filed by Nelson rentals shall be disallowed.

## Conclusion

For the reasons set forth in this Memorandum Decision, the Court finds as follows:

1. Adversary Proceeding No. 18-8003
   a. The first cause of action by the Trustee seeking equitable subordination of the Defendants' claims is dismissed.

   b. Judgment shall be entered in favor of the Trustee and against the Defendants on the second cause of action

   c. Judgment shall be entered in favor of the Trustee and against the Defendants on the third cause of action.

   d. Judgment shall be entered in favor of the Trustee on the fourth cause of action against Nelson Rentals and Nelson in the amount of $213,968.

2. Adversary Proceeding No. 18-8004
   a. The first cause of action by the Trustee seeking equitable subordination of the Defendants' claims is dismissed.

   b. Judgment shall be entered in favor of the Trustee and against the Defendants on the second cause of action

   c. Judgment shall be entered in favor of the Trustee and against the Defendants on the third cause of action.

   d. Judgment shall be entered in favor of the Trustee on the fourth cause of action against Nelson Rentals and Nelson in the amount of $145,550.

3. Proof of claim no. 5 filed by Nelson Rentals in Case no. 17-76177 shall be disallowed pursuant to 11 U.S.C. § 502(d).  In the event the judgment in the Coco Foods case is paid in full, the claim filed by Nelson Rentals in Case no. 17-76177 shall be allowed as an unsecured claim.

4. With respect to both judgments, prejudgment interest shall accrue on the date the fraudulent transfers occurred, at the prime interest rate in effect at the time.  Post judgment interest shall accrue at the federal judgment rate.

The Court shall enter judgments in each adversary proceeding consistent with this Decision After Trial.

Dated: Central Islip, New York
      March 21, 2023



Robert E. Grossman
United States Bankruptcy Judge